**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DANIEL CUNNINGHAM and DEBRA
DE SALVO, individually, and on
behalf of all others similarly situated,

      Plaintiff,

v.

DG3 NORTH AMERICA, INC, JOHN
HANCOCK INVESTMENT MANAGEMENT,
LLC, AND UBS FINANCIAL SERVICES, INC.,

      Defendants.

Case No.: 2:24-cv-07385

---

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT**

Kenneth J. Grunfeld
New Jersey Bar No. 026091999
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
65 Overhill Road
Bala Cynwyd, PA 19004
Tel.: (954) 525-4100
grunfeld@kolawyers.com

John J. Nelson (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
*jnelson@milberg.com*

*Plaintiffs' Interim Class Counsel*

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND PROCEDURAL HISTORY ............................................................2

   A.  Factual Background ............................................................................................2

   B.  Preliminary Approval .........................................................................................3

II.  OVERVIEW OF THE SETTLEMENT ...........................................................................3

   A.  Summary of the Settlement Terms ......................................................................3

   B.  Scope of the Release ...........................................................................................5

   C.  Attorneys' Fees and Costs ..................................................................................5

III. NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS...........................6

IV.  ARGUMENT ......................................................................................................................8

   A.  The Settlement Is Fair, Reasonable, and Adequate............................................8

   B.  The Settlement Satisfies the Rule 23(e)(2) and the *Girsh* Factors.....................9

      1.  The Class Representatives and Class Counsel Have Adequately Represented the Class and the Proposed Settlement Is the Product of Arm's-Length Negotiations Among Experienced Counsel .......................................................................9

      2.  The Relief Under the Settlement Is Adequate..........................................11

         a.  The Settlement Provides Substantial Benefits to the Settlement Class ................11

         b.  The Settlement Provides Immediate Benefits Without the Costs, Risks, and Delay of Trial and Appeal ......................................................13

         c.  The Settlement Effectively Distributes Relief to the Class ...................14

         d.  The Proposed Attorney Fee Award and Class Representative Service Awards Are Reasonable and Will Not Reduce Any Benefits of the Settlement ................14

      3.  The Settlement Treats All Class Members Equitably ................................14

   C.  The Notice Program Is Constitutionally Sound and Has Been Fully Implemented ..........15

   D.  The Court Should Certify the Settlement Class................................................17

V.   CONCLUSION............................................................................................................17

iii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                    <u>Page(s)</u>

*Demmick v. Cellc ' P'ship*,
   2015 WL 13643682 (D.N.J. May 1, 2015) ............................................................... 11

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ............................................................................................ 8

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...................................................................................................... 16

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ................................................................................. 1, 2, 3, 9

*Goodman v. UBS Fin. Servs. Inc.*,
   2023 WL 8519093 (D.N.J. Dec. 7, 2023) ..................................................................... 15

*Google Inc. Cookie Placement Consumer Priv. Litig.*,
   934 F.3d 316 (3d Cir. 2019) ............................................................................................ 8

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
   525 F. App'x 94 (3d Cir. 2013) ..................................................................................... 10

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) .................................................................................... 10, 13

*In re Payment Card Interchange Fee*,
   330 F.R.D. ...................................................................................................................... 9, 13

*In re Restasis Antitrust Litig.*,
   527 F. Supp. 3d 269 (E.D.N.Y. 2021) .......................................................................... 16

*In re Vivopharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .................................................................. 10

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d ......................................................................................................................... 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ...................................................................................................... 15

*Murphy v. Le Sportsac, Inc.*,
   2023 WL 375903 (W.D. Pa. Jan. 24, 2023) .................................................................. 8

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................................... 15

4896-2796-0165, v. 1

*Shapiro v. All. MMA, Inc.*,
   2018 WL 3158812 (D.N.J. June 28, 2018) ...............................................................................11

*Udeen v. Subaru of Am., Inc.*,
   2019 WL 4894568 (D.N.J. Oct. 4, 2019) ...............................................................................9, 15

*Woodward v. NOR-AM Chem. Co.*,
   1996 WL 1063670 (S.D. Ala. May 23, 1996) .......................................................................12

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................*Passim*

**Statutes**

28 U.S.C. § 1715 ..................................................................................................................6, 7, 8

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement, supported by a Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and the Declaration of Cameron R. Azari of Epiq, regarding implementation and Adequacy of Notice Program ("Admin. Decl."), attached as ***Exhibit C***.

On May 28, 2025, this Court preliminarily approved the Settlement, which provides for substantial Settlement Class Member Benefits, including a non-reversionary, all cash $600,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Cash Payments and Credit Monitoring. The Settlement Fund will be used to pay Settlement Class Member Benefits, all Settlement Administration Costs, and any Court-awarded attorneys' fees and costs.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs.[2] The Settlement satisfies all the criteria for Final Approval and satisfies each of the factors under Rule 23(e)(2), *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975) and there has been an overwhelmingly positive reaction from the Settlement Class, with only no objections and only 1 opt-out (out of approximately 53,000 Class Members). *See* Admin Decl., ¶¶ 28, 32. The response of the Settlement Class affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. *See* ECF No. 39. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees, Costs and Service Awards and enter the forthcoming [Proposed] Final Order and Judgment.

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as ***Exhibit A***.

[2] Plaintiffs' Unopposed Application for Attorneys' Fees and Costs is being filed contemporaneously with this Motion for Final Approval.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

### A.    Factual Background

The first case stemming from the Data Incident was filed on June 28, 2024, by Plaintiff Daniel Cunningham.  Following the filing of Plaintiff Cunningham's complaint, a second, related class action lawsuit was filed. *Debra De Salvo v. DG3 North America, Inc.*; Case No. 2:24-cv-07385. Plaintiff DeSalvo's complaint was materially and substantively identical, as it contained overlapping claims, sought to represent the same putative class members, and arose out of the same Data Incident. *See* Grunfeld Decl. ECF No. 38-1 at. ¶4.

Thereafter, on October 1, 2024, Plaintiff De Salvo voluntarily dismissed her action and joined Plaintiff Cunningham to file an Amended Complaint in this Action against Defendants DG3, John Hancock, and UBS, on August 16, 2024, alleging: Negligence/Negligence *per se*, Breach of Implied Contract, Breach of Third Party Beneficiary Contract, Breach of Fiduciary Duty, Breach of Confidence, Unjust Enrichment, and Violation of the Illinois Consumer Fraud Act. *See* ECF No. 13; *id*. ¶ 5.

Shortly thereafter, the Parties began discussing settlement and scheduled a mediation with former Magistrate Judge and experienced class action mediator Morton Denlow. *Id*. ¶7. In advance of the mediation, Plaintiffs propounded informal discovery requests on Defendants to which Defendant DG3 responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of victims impacted, and the specific type of information breached. *Id*. The Parties also exchanged comprehensive mediation statements in advance of the mediation. *Id*. The Parties engaged in mediation with Judge Denlow on January 21, 2025, and were able to reach an agreement in principle on the settlement of this Action. *Id*. ¶9. The Parties have agreed to settle this Action on the terms and conditions set

forth in the Settlement Agreement in recognition that the outcome of this Action is uncertain and that achieving a final result through litigation would require substantial additional risk, uncertainty, discovery, time, and expense for both of the Parties. *Id*. ¶10.

**B.    Preliminary Approval**

On May 28, 2025, the Court granted Plaintiffs' Preliminary Approval Motion. ECF No. 39. Among other things, the Court preliminarily concluded that the Settlement was fair, reasonable, and adequate within the meaning of Rule 23, that the proceedings had afforded counsel the opportunity to assess the claims and defenses in the Action, and that the Settlement was reached following vigorous and intensive arm's-length negotiations. *Id*. The Court also provisionally certified the Settlement Class for settlement purposes. *Id*. Finally, the Court approved the Notice Plan, which the Court found to have satisfied "Rule 23, due process, and constitutes the best notice practicable under the circumstance" and scheduled a final approval hearing for October 14, 2025. *Id*.

Thereafter, the Settlement Administrator commenced the Notice Program and began overseeing the Claim submission process. *See generally* Admin. Decl. The Notice Program has now been completed in full compliance with the Agreement and the Preliminary Approval Order. *Id.*

**II.    OVERVIEW OF THE SETTLEMENT**

**A.    Summary of the Settlement Terms**

The Settlement Class is defined as "all persons residing in the United States whose Private Information was potentially compromised as a result of the Data Breach." The Settlement Class excludes: (a) the judge(s) to whom the Action is assigned and any member of those judges' staffs or immediate family members; (b) counsel for the Parties, any member of their respective staffs

4896-2796-0165, v. 1

who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendants have a controlling interest; and (e) any of Defendants' subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns.  S.A. ¶67.

Additionally, the Settlement Class includes a subclass of Group 1 Settlement Class Members, defined as Settlement Class Members whose Social Security number(s) was/were potentially impacted in the Data Incident, as identified on the Class List provided by Defendant DG3, S.A. ¶50, and a subclass of Group 2 Settlement Class Members, defined as Settlement Class Members whose Social Security number(s) was/were not potentially impacted in the Data Incident, as identified on the Class List provided by Defendant DG3. S.A. ¶51.

Defendant DG3, on behalf of Defendants, agreed to create a non-reversionary Settlement Fund in the amount of $600,000.00 to pay Settlement Class Member Benefits to all Settlement Class Members who file a Valid Claim. *Id.,* ¶ 81.  From the Settlement Fund, Settlement Class members may elect either: (a) Reimbursement for Documented Losses, up to $2,500.00; or (b) Alternative Cash Payment, up to $100 for Group 1 Settlement Class Members and $50 for Group 2 Settlement Class Members. Notices to Settlement Class Members will indicate whether they are in the subclass of Group 1 Settlement Class Members or Group 2 Settlement Class Members.

Settlement Class Members will be required to submit reasonable documentation supporting a claim for reimbursement of Documented Losses. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the identity protection and credit monitoring

services offered as part of the notification letter provided by Defendants or otherwise. *Id*. As an alternative to a claim for reimbursement of Documented Losses, a Group 1 Settlement Class Member may elect to receive an Alternative Cash Payment of up to $100.00, and a Group 2 Settlement Class Member may elect to receive an Alternative Cash Payment of up to $50.00. *Id*.

Additionally, all Settlement Class Members may also elect to receive Credit Monitoring. *Id*. This benefit allows Settlement Class Members to enroll in three years of one credit bureau monitoring with up to $1 million in identity theft insurance. *Id*. If a Settlement Class Member does not submit a Valid Claim or opt-out of the Settlement, the Settlement Class Member will release his or her claims against Defendants without receiving a Settlement Class Member Benefit. *Id*. Settlement Administration Costs, attorneys' fees and costs and Service Awards will also be paid out of the Settlement Fund. ¶ 78.

### B.    Scope of the Release

Plaintiffs and Settlement Class Members who do not opt-out of the Settlement Agreement agree to release Defendants and the Released Parties from all claims arising out of or relating to the Incident. *Id. ¶ 118.*

### C.    Attorneys' Fees and Costs

Pursuant to the Agreement and consistent with the Notice to the Settlement Class, Plaintiffs have requested an attorneys' fee award of one-third of the Settlement Fund ($200,000.00). Plaintiffs' request and authority supporting its reasonableness is detailed in the Unopposed Application for Attorneys' Fees, Costs and Service Awards, filed contemporaneously. The Notices clearly advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. *See* Admin Decl.

## III.    NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS

The Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. *Id*. ¶ 20. On or about June 2, 2025, Epiq received from Defendant's Counsel a list of 53,126 identified Settlement Class Member records. *Id* ¶ 23. The data file contained the names and postal addresses of Settlement Class Members. *Id.* Epiq reviewed the data file and removed duplicative records, resulting in 52,984 unique records ("Class List"). *Id.*

Before mailing the Postcard Notice to Class Members, Epiq ran the updated Class List through the U.S. Postal Service's ("USPS") National Change of Address Database ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.* ¶ 25. In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today. *Id.*

On June 27, 2025, Epiq attempted to send direct notice to 52,983 double Postcard Notices with a detachable Claim Form to Class Members. *Id.* ¶ 24. Postcard Notices returned as undeliverable were remailed to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired but was still within the time period in which the USPS returned the piece with the address indicated), or to better addresses that were found using a third-party address lookup service. *Id.* ¶ 26. Upon successfully locating better addresses, Postcard Notices were promptly remailed. *Id*. As of August 19, 2025, Epiq has remailed 1,031 Postcard Notices. *Id*. In total, Epiq successfully issued Postcard Notices to 51,941 or 98% of the 52,984 Settlement Class Members. *Id.* ¶ 28.

4896-2796-0165, v. 1

On June 27, 2025, Epiq activated a case-specific website, https://DG3Datasettlement.com/ (the "Settlement Website"), where Settlement Class Members are able to file a claim directly on the website or download and print the Claim Form to be completed and mailed via the USPS. *Id*. ¶ 29. Also on the Settlement Website, Settlement Class Members can easily view general information about this class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. *Id*. This case-specific Settlement Website was designed to be user-friendly and makes it easy for Settlement Class Members to find information about the case. *Id*. The Settlement Website also has a "Contact" page whereby Settlement Class Members can mail an inquiry to a dedicated P.O. Box address. *Id*. As of August 19, 2025, there have been 2,470 unique visitor sessions to the Settlement Website, and 8,920 web pages have been presented. *Id*.

On June 27, 2025, Epiq activated the following toll-free number dedicated to this Settlement: 1-888-828-4857. *Id*. ¶ 30. Callers are able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and are able to request a Claim Package be mailed to them. *Id*. This automated telephone system is available 24 hours per day, 7 days per week. *Id*. The toll-free telephone number was prominently displayed in all notice documents. *Id*. As of August 19, 2025, there have been 95 calls to the toll-free telephone number representing 288 minutes of use. *Id*.

The deadline for Settlement Class Members to submit a Claim Form is September 25, 2025. *Id*. ¶ 33. Epiq has received 4,283 Claim Form submissions, (825 online and 3,458 paper). *Id*. Since the Claim Form Deadline has not yet passed, these numbers are preliminary and are subject to change. *Id*. As standard practice, Epiq is in the process of conducting a complete quality control review of Claim Forms received. *Id*. There is a likelihood that after detailed review, the total

4896-2796-0165, v. 1

number of Claim Forms received will change due to duplicate and denied Claim Forms. *Id*. Epiq will provide counsel with a supplemental declaration detailing the number of verified out-of-pocket Claims and average pay out to Class Members by October 6, 2025.

The deadline to submit a request for opt-out from the Settlement is September 15, 2025. *Id*. ¶ 32. Epiq has received 1 timely opt-out request so far. *Id*. The deadline to submit an objection to the Settlement is on September 15, 2025. *Id*. ¶ 32. There have been no written objections to date. *Id*. Epiq will provide a supplemental declaration detailing the number of opt-outs and objections by October 6, 2025.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, and Adequate

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). It has repeatedly stressed that "we favor the parties reaching an amicable agreement and avoiding protracted litigation. We do not wish to intrude overly on the parties' hard-fought bargain." *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) (internal citation omitted). "[T]he settlement of class actions is preferred to protracted litigation: 'there is an overriding public interest in settling class action litigation, and it should therefore be encouraged.'" *Murphy v. Le Sportsac, Inc.*, 2023 WL 375903, at *9 (W.D. Pa. Jan. 24, 2023) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

For purposes of determining whether a proposed class action settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate" taking into account certain relevant factors;

and "the proposal treats class members equitably relative to each other." *See id.*

The Advisory Committee Notes make clear that these factors do not displace the "lists of factors" courts have traditionally applied to assess proposed class settlements. Instead, the enumerated factors under Rule 23(e)(2) "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) (advisory committee's note to 2018 amendment).

Courts in the Third Circuit also evaluate whether a settlement is "fair, reasonable, and adequate" using the nine *Girsh* approval factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *3 (D.N.J. Oct. 4, 2019*) (applying *Girsh* factors). Application of the Rule 23(e)(2) and traditional factors clearly demonstrates that the settlement is fair, reasonable, and adequate, and in the best interests of the class.

**B.    The Settlement Satisfies the Rule 23(e)(2) and the *Girsh* Factors**

**1.    The Class Representatives and Class Counsel Have Adequately Represented the Class and the Proposed Settlement Is the Product of Arm's-Length Negotiations Among Experienced Counsel**

Under Rule 23(e)(2)(A) and (B), the Court considers whether the class representatives and class counsel adequately represented the class and whether the settlement proposal was negotiated at arm's length. *See In re Payment Card Interchange Fee*, 330 F.R.D. at 29 (quoting Fed. R. Civ.

9

P. 23 advisory committee's note to 2018 amendment) ("Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"). These factors overlap with the third *Girsh* factor: "the stage of the proceedings and the amount of discovery completed." *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537 (citation omitted) ("The third Girsh factor captures the degree of case development that class counsel [had] accomplished prior to settlement.").

Plaintiffs and their counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this Action on behalf of the proposed Settlement Class, including, *inter alia,* by drafting detailed complaints, engaging in extensive pre-mediation document discovery of Defendants, and engaging in extensive settlement negotiations, including thorough pre-mediation briefing and extensive argument in connection with the mediation. *See In re Vivopharma Inc. Sec. Litig.,* 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (approving settlement after arm's-length negotiation overseen by Phillips ADR Enterprises after the parties "had fully briefed the main issues in the case and conducted merits-based ... discovery"). The collective tenacity of Plaintiffs and Class Counsel resulted in a very favorable settlement with a substantial financial benefit to the Settlement Class. Moreover, the Third Circuit has recognized that prompt resolution benefits class members and is another factor supporting approval. *See e.g., Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 102 n.12 (3d Cir. 2013) ("avoiding expensive and time-consuming discovery" favors approval) (cleaned up).

Procedural fairness can also be presumed when the settlement was negotiated by experienced and informed counsel assisted by a respected mediator. *See, e.g.*, *In re Nat'l Football*

*League Players Concussion Inj. Litig.*, 821 F.3d 410, 435 (3d Cir. 2016), as amended (May 2, 2016). "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Shapiro v. All. MMA, Inc.*, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) (citation omitted).

This presumption should apply here given that highly experienced counsel on both sides vigorously negotiated the Settlement over the course of many months after a mediation session with an experienced, professional mediator. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (advising that "the involvement of a neutral . . . mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Demmick v. Cellc' P'ship*, 2015 WL 13643682, at *6 (D.N.J. May 1, 2015) ("[T]he use of a mediator with respect to the present settlement is persuasive evidence that the negotiations were hard-fought, arms-length affairs.").

### 2.    The Relief Under the Settlement Is Adequate

#### a.    The Settlement Provides Substantial Benefits to the Settlement Class

Under Rule 23(e)(2)(C), the Court must determine whether the class-wide relief is adequate, taking into account: "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[3] Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

---

[3] There are no side agreements to disclose under Rule 23(e)(3).

Although Plaintiffs believe that the claims asserted in this Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. The settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Action. Without any of the risks involved with further litigation, the Settlement Agreement provides Settlement Class Members with the opportunity to claim significant settlement benefits. Moreover, there are no grounds to doubt the fairness of the settlement or other obvious deficiencies, such as unduly preferential treatment of Plaintiffs or excessive attorney compensation. Plaintiffs, like all Settlement Class Members, will receive benefits consistent with the Settlement Agreement. The substantial benefits afforded to Settlement Class Members here are excellent.

Further, continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. A settlement is beneficial to all parties, including the Court. *See Woodward v. NOR-AM Chem. Co.,* 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation . . . ' can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'") (quoting *In re US. Oil & Gas Litig.,* 967 F.2d 489,493 (11th Cir. 1992)).

The adequacy of the relief also overlaps with the second, seventh, eighth, and ninth *Girsh* factors. The second *Girsh* factor considers the reaction of the class to the settlement. As noted above, the fact that the Parties have received no objections from Settlement Class Members, and only 1 of the approximately 51,941 Settlement Class Members requested to opt-out, shows overwhelmingly that the Class favors the Settlement. The seventh *Girsh* factor—Defendant's

ability to withstand a greater judgment—is neutral, at most, in this case, since this factor only matters "when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 440. This is not at issue here, as the settlement relief is excellent and is in the form of a non-reversionary common fund. The eighth and ninth *Girsh* factors weigh in favor of approval because the Settlement is in the range of reasonableness in light of the best possible recovery and the attendant risks of continued litigation. *Id.* (quoting *Warfarin*, 391 F.3d at 538) ("In evaluating the eighth and ninth *Girsh* factors, we ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'").

### b. The Settlement Provides Immediate Benefits Without the Costs, Risks, and Delay of Trial and Appeal

The relief provided is also adequate considering the costs, risks, and delay of trial and appeal.[4] Fed. R. Civ. P. 23(e)(2)(C)(i). The Settlement benefits are particularly valuable because they come sooner, rather than later. Settlement Class Members do not need to wait years to receive the benefits of the Settlement. Here, the risks and delay of trial and appeal, "including (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial," support approval of the Settlement. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). This is a complex case, which would have taken years and significant expense to litigate to a final judgment. Further, Defendants disputed Plaintiffs' claims and would have vigorously defended this action. By virtue of their efforts and determined

---

[4] This factor overlaps with the first, fourth, fifth, and sixth *Girsh* factors, which are: "the complexity, expense and likely duration of the litigation"; "the risks of establishing liability"; "the risks of establishing damages"; and "the risks of maintaining the class action through the trial."

negotiation, Plaintiffs and Class Counsel achieved a result that is perhaps better than they could have achieved through continued litigation.

### c. The Settlement Effectively Distributes Relief to the Class

Additionally, the Settlement provides an effective means of distributing relief to the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). While a Claim Form and documentary evidence is required for Settlement Class Members to seek reimbursement of Documented Losses, this is both standard and necessary to validate Claims, and Class Counsel undertook significant effort to ensure that the claim process is as simple and straightforward as possible. *See* S.A., Exhibit 3.

### d. The Proposed Attorney Fee Award and Class Representative Service Awards Are Reasonable and Will Not Reduce Any Benefits of the Settlement

"[T]he terms of [the] proposed award of attorney's fees, including timing of payment" are fair and reasonable, Fed. R. Civ. P. 23(e)(2)(C)(iii), and will not reduce any benefits afforded by the Settlement. The Fee and Expense Application was filed in accordance with the schedule set forth in the Preliminary Approval Order, and Class Counsel and the Claim Administrator have received no objections. Moreover, the attorneys' fees approved by the Court will be paid only after the Settlement has become final, and approval of the Settlement is not conditioned upon an award of any attorneys' fees, expenses, or Service Awards.[5]

### 3. The Settlement Treats All Class Members Equitably

The proposed Settlement also treats Settlement Class Members equitably relative to each other, as required by Rule 23(e)(2)(D). Settlement Class Members have the opportunity to file claims for reimbursement of Documented Losses or an Alternative Cash Payment and also

---

[5] Plaintiffs incorporate by reference all arguments in the Application for Attorneys' Fees, Costs and Service Awards filed contemporaneously with this Motion.

provides a Credit Monitoring benefit to Settlement Class Members who elect that benefit, which includes three years of one-bureau credit monitoring with up to $1 million in identity theft insurance. In sum, the Settlement ensures that all Settlement Class Members will be treated equitably relative to each other.

### C.    The Notice Program Is Constitutionally Sound and Has Been Fully Implemented

To protect the rights of absent Settlement Class Members, the Court must ensure everyone who would be bound by a class action settlement are provided the best practicable notice. *See* Fed. R. Civ. P. 23(e)(1)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). For Rule 23(b)(3) classes, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule provides, "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

Here, as the Court held in granting preliminary settlement approval, the "The Proposed Notice Program set forth in the Settlement Agreement, and the Postcard Notice, Long Form Notice, and Claim Form attached to the Settlement Agreement as Exhibits 1, 2, and 3, respectively, satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and (e)(1), and are hereby approved." ECF No. 39, Pg. 6. Notice was accomplished by direct mail notice. *See, e.g., Goodman v. UBS Fin. Servs. Inc.*, 2023 WL 8519093, at *1 (D.N.J. Dec. 7, 2023) (finding direct mail notice supplemented by posting of the notice online to be the best notice practicable); *Udeen*, 2019 WL

4894568, at *6-7 (finding direct mail notice of postcards the "best notice that is practicable" in an automotive defect case).

As explained above in Section III (C), the proposed Notice Program represents the best notice practicable. It was negotiated, reviewed, and analyzed to ensure it meets the requisite due process requirements. The Claim Form and Postcard Notice are clear and concise, and directly apprise Settlement Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B). The Notice Program is consistent with, and exceeds, other similar court-approved notice plans, the requirements of Fed. Civ. P. 23(c)(2)(B), and the Federal Judicial Center ("FJC") guidelines for adequate notice. The Claim Administrator confirms that the Notice Program reached at least 98% of Settlement Class Members. Admin. Decl. ¶28. This is an outstanding result.[6]

The Notice Program provided the best notice practical under the circumstances, giving Settlement Class Members a full and fair opportunity to consider the terms of the Settlement and make a fully informed decision as to whether to participate, object, or opt-out. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (noting that individual notice is preferred where addresses of class members can be ascertained through reasonable effort). The Class Notice fulfilled the requirements of due process and those under Rule 23(c)(2).

### D.    The Court Should Certify the Settlement Class

Finally, the Settlement Class should be certified for purposes of final approval. The Court

---

[6] *See* FJC, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf ("A high percentage [of the class] (e.g., between 70-95%) can often reasonably be reached by a notice campaign."); *see also In re Restasis Antitrust Litig.,* 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (citation omitted) (observing that "a notice plan that reaches between 70 and 95 percent of the class is reasonable," and endorsing a notice plan with 80% expected reach).

had preliminarily certified the Settlement Class pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of that conclusion. The Rule 23 requirements are satisfied here.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant Plaintiffs' motion for final approval of the Settlement; (2) find that the Settlement is fair, reasonable, and adequate, and satisfies the requirements of Fed. R. Civ. P. 23; (3) certify the Settlement Class for settlement purposes only; (4) grant final appointment of Class Counsel, the Plaintiff-Class Representatives, and the Settlement Administrator; (5) find that the notice was carried out in accordance with the approved Notice Program set forth in the Preliminary Approval Order, satisfies due process, and was the best notice practicable under the circumstances; (6) authorize the Settlement benefits to be distributed in accordance with the terms and conditions of the Settlement Agreement; (7) grant Plaintiffs' Application for Attorneys' Fees, Costs and Service Awards; and (7) enter a Final Approval Order and Judgment in the form to be submitted by the Parties.

Dated: September 2, 2025                    Respectfully Submitted,

By: *s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
New Jersey Bar No. 026091999
**KOPELOWITZ OSTROW P.A.**
65 Overhill Road Bala Cynwyd, PA 19004
Tel.: (954) 525-4100
grunfeld@kolawyers.com

John Nelson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
jnelson@milberg.com

*Class Counsel for the Settlement Class*

17