UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL CUNNINGHAM and DEBRA DE SALVO, individually, and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>DG3 NORTH AMERICA, INC., JOHN HANCOCK INVESTMENT MANAGEMENT, LLC, and UBS FINANCIAL SERVICES, INC.,<br><br>          Defendants. | Docket No.: 2:24-cv-07385<br><br>**OPINION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Presently before the Court in this suit against Defendants DG3 North America, Inc. ("DG3"), John Hancock Investment Management, LLC ("John Hancock"), and UBS Financial Services, Inc. ("UBS") (collectively "Defendants") are the unopposed motions of Plaintiffs Daniel Cunningham and Debra De Salvo, individually and on behalf of the provisionally certified Settlement Class ("Plaintiffs") for: 1) final approval of a class action settlement, ECF No. 40, and 2) an award of attorneys' fees and expenses and compensatory awards for the lead Plaintiffs, ECF No. 41. For the reasons stated below, the motions are **GRANTED** and the settlement is finally **APPROVED**.

**I.    BACKGROUND[1]**

**A.  Facts and Procedural History**

This action, filed on June 28, 2024, arises out of a cybersecurity incident impacting DG3 discovered on March 19, 2024 ("Data Incident"). An Amended Complaint was filed on October 1, 2024 alleging negligence/negligence *per se,* breach of implied contract, breach of third-party beneficiary contract, breach of fiduciary duty, breach of confidence, unjust enrichment, and violation of the Illinois Consumer Fraud Act. ECF No. 13. Plaintiffs and Class Members are current and former clients of John Hancock and/or UBS, who, in order to obtain services from John Hancock and/or UBS, were and are required to entrust Defendants with their sensitive, non-public personal identifying information ("PII"). Amended Comp. ¶ 5.

---

[1] All capitalized terms that are not defined herein have the same meaning as defined in the Settlement Agreement.

After informal discovery and an exchange of mediation statements, the parties engaged in mediation with a former Magistrate Judge Martin Denlow on January 21, 2025 and reached an agreement in principle. Kenneth Grunfeld Decl. ("Grunfeld Decl.") at ¶¶ 7, 9, ECF No. 38-1.

On May 28, 2025, this Court granted preliminary approval of the Settlement, ("Preliminary Approval Order") as "fair, reasonable, and adequate" under Fed. R. Civ. P. 23. Preliminary Approval Order, III, ECF No. 39. The Court also provisionally certified the Class for settlement purposes only and approved the proposed Settlement notice documents and notice plan. *Id.* at I, VI-VIII. A hearing on the final approval of the Settlement (the "Fairness Hearing") was held on October 14, 2025.

### B. The Proposed Settlement

Pursuant to the Settlement Agreement, ECF No. 40-1, the "Settlement Class" is defined as:

> all persons residing in the United States whose Private Information was potentially compromised because of the Data Incident. The Settlement Class excludes: (a) the judge(s) to whom the Action is assigned and any member of those judges' staffs or immediate family members; (b) counsel for the Parties, any member of their respective staffs who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendants have a controlling interest; (e) any of Defendants' subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns; and (f) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

Settlement Agmt. ¶ 80. The Settlement Class includes Group 1 Settlement Class Members and Group 2 Settlement Class Members; however, an individual cannot be a member of both groups. *Id.* "Group 1 Settlement Class Member(s)" are "Settlement Class Members whose Social Security number(s) was/were potentially impacted in the Data Incident, as identified on the Class List provided by Defendant DG3." *Id.* at ¶ 50. "Group 2 Settlement Class Member(s)" are "Settlement Class Members whose Social Security number(s) was/were not potentially impacted in the Data Incident, as identified on the Class List provided by Defendant DG3." *Id.* at ¶ 51.

DG3, on behalf of John Hancock and UBS, agreed to create a $600,000 non-reversionary common fund for settlement of this matter ("Settlement Fund") in exchange for the release of all claims that relate to or arise from the Data Incident. *Id.* at ¶ 83, XII. When submitting a Claim, Settlement Class Members may elect either (a) reimbursement for Documented Losses up to $2,500.00 or (b) in lieu of reimbursement for Documented Losses, an Alternative Cash Payment up to $100 for Group 1

2

Settlement Class Members and $50 for Group 2 Settlement Class Members, and (c) Credit Monitoring. *Id.* at ¶¶ 94-95, 98. If a Settlement Class Member does not submit a Valid Claim or opt-out of the settlement, the Settlement Class Member will release his or her claims against Defendants without receiving any Settlement Class Member Benefits. *Id.* at 94. Any amount remaining in the Residual Settlement Fund shall be paid to the Non-Profit Residual Recipient. *Id.* at ¶ 91. The Settlement Agreement provides for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of reasonable costs. *Id.* at ¶ 144.

### C. Notice

On June 27, 2025, the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc., sent 52,983 double postcard notices ("Postcard Notice") with a detachable Claim Form to Class Members. Decl. of Cameron R. Azari ("Azari Decl."), Pls. Mot. Ex. C ¶ 24, ECF No. 40-3. As of September 2, 2025, the Postcard Notices were delivered to 51,956 or approximately 98% of the Settlement Class. *Id.* ¶ 28.

The Postcard Notice advises of the Settlement and includes a Settlement website (www.DG3DataSettlement.com) that provides detailed information concerning the Settlement including access to the Long Form Notice and additional information about the Settlement. *Id.* at ¶ 24. The website also includes a toll-free number, 1-888-828-4857, and a P.O. Box address for additional information.

The deadline for any objections to or exclusion from the Settlement was September 15, 2025. Azari Decl. ¶ 32. The deadline for Settlement Class Members to file a Claim Form was September 25, 2025. *Id.* at ¶ 34. As of October 3, 2025, Epiq has received one request for exclusion, no objections to the Settlement, and 5,357 Claim Forms. Oct. 6, 2025 Decl. of Cameron R. Azari ("Suppl. Azari Decl.") ¶¶ 9-10, ECF No. 44. Of those Claim Forms, 196 were from non-Class Settlement Members. *Id.* at ¶ 10. Epiq is in the process of reviewing and auditing all Claim Forms received. *Id.* As of October 3, 2025, Equiq has invoiced $79,589.66 to implement the Notice Plan and handle the settlement administration to date. Suppl. Azari Decl., ¶ 11. Equip anticipates that additional costs will be incurred leading up to and following the Fairness Hearing to complete all aspects of the settlement administration. *Id.*

## II.  DISCUSSION

Plaintiffs' pending motions ask the Court to: (1) approve the Settlement Agreement as fair, reasonable, and adequate; (2) certify the Class under Rule 23 to effectuate the class settlement; and (3) award attorneys' fees and expenses to Class Counsel and Service Awards in the amount of $2,500 to each Class Representative.

### A. Motion to Approve Settlement

3

### 1. Adequacy of Notice

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires notice of: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." In addition, notice of the settlement must be the best that is "practicable under the circumstances," and "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2). The form and manner of the notice must satisfy the requirements of due process. *Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018).

Here, the notice provided to Class Members satisfies the requirements of Fed. R. Civ. P. 23 and due process. The notices were provided to Class Members by a third-party claims administration and describe: (1) the nature of the action and the bases for the claims, 2) the definition of the certified class, (3) the key terms of the Settlement, including the Settlement Amount, the process for each Class Member to receive a Settlement payment, and the release of claims against Defendants, (4) the binding nature of the Settlement on each Class Member, and (5) the rights of each Class Member to retain separate legal counsel, object to the Settlement, opt-out of the Class, or appear at the Fairness Hearing, as well as the deadlines by which to do so. *See* Settlement Agreement, Azari Decl and attached Exhibits, Settlement website. Such notice "contain[ed] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("*Baby Prods.*").

Likewise, the manner in which Class Members were notified was the best practicable under the circumstances and also satisfies the requirements of Rule 23 and due process. Potential Class Members were notified by mail in accordance with the Court's Preliminary Approval Order. *See* May 28, 2025 Preliminary Approval Order.

### 2. *Girsh* and *Prudential* Considerations of Settlement

Fed. R. Civ. P. Rule 23(e) requires court approval of any proposed settlement of a class action. A court may, in its discretion, approve a proposed class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* ("*Prudential*"), 148 F.3d 283, 299, 316 (3d Cir.1998). While there is a general presumption in favor of a settlement in the class action context, the Court also "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods.*

4

*Liab. Litig.*, ("*General Motors*"), 55 F.3d 768, 785 (3d Cir.1995) (citations and quotations omitted).

The Third Circuit has identified nine factors for evaluating a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 531 F.2d 153, 157 (3d Cir.1975).

Beyond these nine *Girsh* factors, additional factors the Court may consider when appropriate and relevant, include: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential*, 148 F.3d at 323. An additional inquiry to test the reasonableness of a settlement is whether the settlement provides a "direct benefit" to members of the class. *See Baby Prods*, 708 F.3d at 174. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000) (quotations omitted). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-07658, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) ("*Valeant*"). The Court addresses each *Girsh* factor, and, where appropriate, *Prudential* factor, in turn.[2]

### i. The complexity, expense and likely duration of the litigation

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) ("*NFL Players Litig.*"). Here, the costs, complexity and likely duration of this case strongly favor settlement. This action is complex as it involves thorny issues regarding the emerging field of data breach liability. *See Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019)

---

[2] Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019). Accordingly, this Court likewise focuses its analysis on the appropriate *Girsh* and *Prudential* factors.

(recognizing data breach litigation as complex, risky, and uncertain). Since formal discovery has not yet begun, significant expense and discovery remain. While Plaintiffs believe that their claims are meritorious and that they would ultimately prevail at trial, continued litigation would be lengthy, costly, and time-consuming. Settlement eliminates the costs and risks associated with further litigation. The Settlement Class would also receive prompt compensation. Thus, this factor weighs strongly in favor of final approval.

### ii. The reaction of the class to the settlement

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("*Warfarin*") (quoting *Prudential,* 148 F.3d at 318). The absence of any objections by Class Members and only one opt-out strongly weigh in favor of approval of the Settlement. *See e.g., NFL Players Litig.*, 821 F.3d at 438; *Little-King v. Hayt Hayt & Landau,* No. 11-5621, 2013 WL 4874349, at *21 (D.N.J. Sept. 10, 2013) (collecting cases). *See e.g., Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (finding 29 objectors out of a class of 281 "strongly favors settlement"). This demonstrates that the Settlement Class has reacted overwhelmingly positively to the Settlement.

### iii. The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether class counsel had an adequate appreciation of the merits of this case before negotiating." *In re Cendant Corp. Litig.,* 264 F.3d 201, 235 (3d Cir. 2001) (quotations omitted). "The fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012). In this case, Plaintiffs engaged in informal discovery, exchanged mediation briefs, and participated in mediation. Thus, the parties had an adequate appreciation of the merits of the case even without formal discovery. Accordingly, this factor weighs in favor of approval of the Settlement. *Cf. Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though case was still in the early stages of discovery).

### iv. The risks of establishing liability and damages

Together, the fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement." *Warfarin,* 391 F.3d at 537. In other words, the Court must consider "what the potential rewards (or downside) of litigation might have been had class

6

counsel elected to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. The Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation. Even if the class is certified, which Defendants would likely oppose, and Plaintiffs survive any dispositive motions, there is no guarantee that Plaintiffs would be successful in proving liability and damages. While Plaintiffs certainly may ultimately succeed in establishing liability and damages at trial, there is no reasonable certainty that such a result is likely. Even assuming a favorable trial outcome, Defendants might appeal, further delaying any benefit to the Class. Accordingly, given the real and extensive risks involved in Plaintiffs' case, these two factors weigh in favor of approving the Settlement.

### v. The risks of maintaining the class action through the trial

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537 (citations omitted). Defendants may oppose class certification and even if the Court were to certify a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Prudential*, 148 F.3d at 321 ("Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable."). Hence, since the class has yet to be certified and given the risks, this factor favors approving the Settlement.

### vi. The ability of the defendants to withstand a greater judgment

Even if Defendants could withstand a much greater judgment, this fact has marginal relevance unless the ability of a defendant to survive a judgment is central to the negotiation process. *See McLellan v. LG Electronics USA, Inc.*, No. 10-3604, 2012 WL 686020, at *7 (D.N.J. March 2, 2012); *Warfarin*, 391 F.3d at 538 ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached"). Defendants' resources do not affect the Court's determination to approve the Settlement. Thus, this factor is neutral.

### vii. The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation

The eighth and ninth *Girsh* factors analyze "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* Here, the relief that the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks

7

of litigation. Additionally, all Settlement Class Members may also elect to receive Credit Monitoring. Settlement Agmt. ¶ 99. This benefit will minimize the risk of further harm in the future. In light of the risks of proceeding with litigation discussed above, and the certainty of the benefits provided by the Settlement, these factors weigh in favor of approving the Settlement.

### viii. The *Prudential* Factors

In addition to the *Girsh* factors, the relevant *Prudential* factors favor approving the Settlement. Regarding the maturity of the underlying issues, although the Parties did not conduct formal discovery, Defendants provided Plaintiffs with informal discovery to allow for Plaintiffs and Class Counsel to determine the circumstances surrounding this litigation. *See, e.g., Weiss*, 899 F. Supp. at 1301 (approving settlement of case still in early stages of discovery). The *Prudential* factors that relate to the existence of other classes and subclasses are irrelevant here as the Settlement Class encompasses all persons whose PII were affected in the Data Incident. Class Members had ample opportunity to object or opt-out of the Settlement and were provided clear instructions on how to do so. *See supra*, I.C. The procedure for processing individual claims under the Settlement is fair and reasonable, providing for Settlement Class Members to be able to submit claims online or via a paper claim form. *See* Azari Decl. ¶ 33. As explained in more detail below, the provision for attorneys' fees is also fair and reasonable. Finally, the Settlement also offers "direct benefits" to the settlement class given that all Settlement Class Members can receive reimbursement under the Settlement or an Alternative Cash Payment and credit monitoring. *See Baby Prods.*, 708 F.3d at 174. The Court approves the Settlement finding it to be fair, reasonable, and adequate.

### B. Class Certification

In order to approve a class settlement agreement as fair under Fed. R. Civ. P. 23(c), the Court must additionally determine that the requirements for class certification under Rules 23(a) and (b) are also met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). Each Rule 23 requirement must be established by a preponderance of the evidence. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," the court considers merits questions only to the extent they are relevant to performing the "rigorous analysis" required to determine whether the Rule 23 prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

#### 1. Rule 23(a) Factors

Rule 23(a) provides that the class may be certified if: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties

8

will fairly and adequately protect the interests of the class ("adequacy"). *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(a)). As discussed below, the Rule 23(a) requirements for class certification are satisfied.

### i. Numerosity

Numerosity is satisfied when joinder of all putative class members is impracticable. Fed. R. Civ. P. 23(a)(1). Where the number of potential plaintiffs exceed forty, the numerosity requirement is generally fulfilled. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, there are 52,984 Settlement Class Members and 4,283 Claim Forms received as of September 2, 2025. Numerosity is therefore satisfied.

### ii. Commonality

Commonality requires that the members of the class must assert a common contention that is capable of classwide resolution such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 489–90 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 350); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (noting that the "commonality requirement 'does not require identical claims or facts among class member[s]" (citations omitted)).

In this case, the dispute involves common issues relating to the Data Incident and the alleged failure to adequately protect PII, the resulting harm to the Class, and the appropriate measure of Class damages. The proposed class is sufficiently cohesive that the Class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. Commonality and predominance requirements in Rules 23(a)(2) and 23(b)(3), respectively, are thus satisfied.

### iii. Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). "The typicality inquiry centers on whether the interest of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227 (citation omitted). Thus, the typicality requirement ensures "that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Stewart*, 275 F.3d at 227–28 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)). For the typicality inquiry, a court thus compares "the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598.

Plaintiffs' claims here are typical because both Plaintiffs and Class Members were injured by the same common course of conduct by Defendants— the alleged failure to protect PII in the Data Incident—and plead causes of action common to all Settlement Class Members. Furthermore, Plaintiffs are not "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp.*, 589 F.3d at 599. Thus, Plaintiffs stand in precisely the same position as the putative Class Members. The requirements of typicality are met.

### iv. Adequacy

Adequacy "encompasses two distinct inquiries designed to protect the interests of absentee class members." *Prudential*, 148 F.3d at 312. "First, [it] tests the qualifications of the counsel to represent the class." *Id.* "Second, it 'serves to uncover the conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As this Court has previously noted, John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC and Kenneth J. Grunfeld of Kopelowitz Ostrow Ferguson Weiselberg Gilbert ("Class Counsel") are experienced, familiar with the applicable legal issues, and qualified to represent the Class. *See* Preliminary Approval Order, II. Moreover, the Settlement was reached after arm's length negotiations and mediation. Regarding the second prong, there is no conflict of interest between the named parties and the Class. *Amchem*, 521 U.S. 591, 625–26. Plaintiffs, having suffered the same injury as the Class Members, possess the same interest and will adequately represent the interests of the Class. The adequacy requirement is satisfied.

### 2. Rule 23(b)(3) Factors

Next, in addition to Rule 23(a), class certification requires that a plaintiff also meet one of the requirements set forth in Rule 23(b). Plaintiffs here specifically seek certification of a settlement class under Rule 23(b)(3), which permits certification only if (1) questions of law or fact common to class members predominate over individual questions ("predominance"), and (2) a class action is the superior method for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). Factors relevant to a finding of predominance and superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As set forth below, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

### i. Predominance

Predominance requires the court to evaluate whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. Rule 23(b)(3). The inquiry, while similar to the considerations under Rule 23(a)'s commonality requirement, is a "far more demanding" standard that requires the Court to determine if the proposed class is sufficiently cohesive that members of the class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("where an action is to proceed under Rule 23(b)(3), the commonality requirement 'is subsumed by the predominance requirement." (internal quotations and citation omitted)). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298; *see also Warfarin*, 391 F.3d at 528 (finding predominance in "broad-based" campaign to deceive providers and patients regarding a generic equivalent).

The Court must examine through the prism of Rule 23(b)(3) the elements of Plaintiffs' claim and ask whether proof of the essential elements require individual treatment. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 266 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)); *see also Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370-71 (3d Cir. 2015). The mere existence of individual questions does not preclude a finding of predominance, nor does the possibility that some individualized inquiry as to damages may be required. *Neale*, 794 F.3d at 371. Rather, the Court engages in a qualitative examination of both common and individual issues. *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)).

Here, Defendants' alleged failure to protect PII properly provides the basis for liability as to all potential Class Members. Common proofs required to demonstrate this violation predominate over individualized inquiries. No individual inquiry will be necessary regarding Defendants' liability to each Class Member. Predominance is satisfied.

### ii. Superiority

Finally, to establish superiority, a plaintiff must demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co.*, 543 F.3d at 149 (citation omitted).

In this case, many of the putative Class Members are individuals for whom pursing a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Class Member has brought a separate claim, which would likely be consolidated into this action anyway. Litigating these claims separately would further

unduly burden the judicial system. *Warfarin*, 391 F.3d at 534. Fairness and efficiency accordingly weigh in favor of a finding that a class action is the superior method of adjudicating these claims. Hence, a class action is the superior method of adjudication in this matter.

## C. Motion for Attorneys' Fees

Class Counsel request an attorneys' fees award of $200,000 (one-third of the Settlement Fund), costs and expenses in the amount of $18,855.56, settlement administration costs to date of $79,589.66, and service awards of $2,500 for each of the two Class Representatives ($5,000 total) to be paid out of the Settlement Fund.

### 1. Attorney's Fees for Class Counsel

Pursuant to Rule 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Although the decision to award attorneys' fees and expenses is within the Court's discretion, the Court must carefully review the negotiated award to ensure that it is fair, reasonable, and adequate. *Little-King*, 2013 WL 4874349, at *18; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("*Rite Aid*"). "Two considerations must play central roles in the assessment of a fee award under Rule 23(h): 1) how the amount awarded stacks up against the benefit given to the class, using either the amounts paid or the sums promised; and 2) whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 718–19 (3d Cir. 2023) (footnote omitted). There is no evidence of any side agreements in this case.

In evaluating an award of attorneys' fees, courts typically apply one of two methodologies: (1) the lodestar method in which the number of hours worked by Class Counsel is multiplied by a reasonable hourly billing rate for such services; or (2) the percentage-of-recovery method in which Class Counsel is awarded a certain percentage of the Settlement Amount. *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Where, as here, the Settlement provides for the payment of attorneys' fees from the same source as the pool of settlement funds available to Class Members, the arrangement "is, for practical purposes, a constructive common fund" that is best analyzed using the percentage-of-recovery methodology. *See Dewy v. Volkswagen AG*, 558 F. App'x 191, 197 (3d Cir. 2014); *see also General Motors*, 55 F.3d at 820-21.

#### i. Percentage of Recovery Analysis

The Third Circuit has identified a number of factors for the Court to consider in determining whether a fee award is reasonable under the percentage-of-recovery analysis: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or

fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). In addition to these seven factors, a court may evaluate these three additional factors: (8) the value of benefits attributable to efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs (Phentermine/Flenfuramine/Dexflenfuramine) Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

The first factor supports the requested award because the $600,000 settlement benefits thousands of investors. The second and fifth factors overlap considerably with those already considered by the Court in approving the Settlement as fair, reasonable, and adequate. The Court has already noted the absence of any objections to the Settlement, notice of which included specific information about the fees requested by Class Counsel. *See* Settlement Website; *see also Valeant*, 2020 WL 3166456, at *12. Similarly, the Court has already analyzed the risk of nonpayment by noting the various risks, including the risk of an unsuccessful trial or appeal, that would render Plaintiffs, and their contingency-fee based counsel unable to recover anything at all. *See supra*, II.A.2.iv.; *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("*Merck*"). Accordingly, as with the Settlement, these factors weighs in favor of approving the request for an award of attorneys' fees and expenses.

Likewise, the third factor supports approving the requested fee award. This factor measures the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Valeant*, 2020 WL 3166456, at *12 (quotations omitted). As already noted, the $600,000 Settlement is immediate and substantially benefits the Class particularly in light of the length of this case, the complex issues involved, and the zealous advocacy of counsel on both sides.[3]

As to the fourth factor, the Court has already recognized the complexity of this case, *see supra*, II.A.2.i, which supports the proposed fee award. However, this is offset by the short duration of this litigation. *See e.g., Corra v. ACTS Retirement Servs., Inc.*, No. 22-2917, 2024 WL 22075, at *14 (E.D. Pa. Jan. 2, 2024) (noting short duration of litigation could weigh against determining that proposed fee is reasonable); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (finding district court's award of fees constituting 5.7% to 7.3% was troubling where case was not factually complex, did not

---

[3] Class Counsel's brief to the Court, however, contains numerous citation errors, *see* ECF No. 40.

13

require significant motion practice or discovery, and entire duration of case from filing of Amended Complaint to settlement was only 4 months). Similarly, this case is not *factually* complex, there was limited motion practice, and only informal discovery, and little more than 5 months between the filing of the Amended Complaint and the notice of settlement. Thus, weighed against complexity, this factor is neutral. *See e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 WL 1557366, at *20 (E.D. Pa. Apr. 9, 2024) (finding complexity and duration factor neutral since complexity supported award but duration of litigation was only 9 months).

The sixth factor considers that counsel spent a combined 215.20 hours on this case. While attorneys need not submit actual billing records, Class Counsel provided only a general list of completed tasks without describing which tasks were performed during the total hours spent by each attorney. This makes it impossible for the Court to determine whether the time spent on certain tasks was reasonable and did not include, for example, duplicative work by the two firms. *See* Supp'l Joint Decl. of Class Counsel ("Fee Decl.") ¶¶ 3-4, ECF No. 43. Nevertheless, the total time is consistent with other data security cases that have settled early. *See e.g., Fulton-Green*, 2019 WL 4677954, at *11 (approving proposed fees where data breach class counsel devoted 560 hours in reaching settlement). Moreover, Class Counsel will likely be expending additional hours and resources assisting Class Members with the claims process. Thus, this factor only slightly favors approving the requested award.

In evaluating the reasonableness of a requested fee award, the seventh factor requires the Court to compare the requested award to those approved in similar cases. In common fund cases such as this one in which the percentage-of-recovery methodology is used, fee awards have ranged between 19% to 45% of the settlement fund. *See General Motors*, 55 F.3d at 822. "[C]ourts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011). In class action settlements of data breach cases, attorney fees awards have generally been between 20% to 30% of the settlement. *See e.g., Fulton-Green*, 2019 WL 4677954, at *12 (approving fee award of 21% in data breach class action settlement with potential value up to over $1.4 million); *In re Wawa*, 2024 WL 1557366, at *21 (approving requested fee award of 24.9% ($3,040,060) of common fund (value of $12.2) in data breach case); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1281 (11th Cir. 2021) (affirming attorney's fees award of 20.36%, which was $77.5 million of $380.5 million settlement fund); *Pfeiffer v. RadNet, Inc.*, No. 20-09553, 2022 WL 2189533, at *2-3 (C.D. Cal. Feb. 15, 2022) (awarding requested attorneys' fees of $650,000, 25% of settlement fund, for over 1,400 hours of time). Thus, the requested 33.33% of the Settlement Fund is within the reasonable range of awards approved by the Third Circuit.

The eighth factor weighs in favor of approving the 33.33% award for attorneys' fees and expenses. The claims in this case were independent of any investigative reports or

enforcement actions by any governmental entity. Thus, the value of the Settlement achieved is directly attributable to the efforts of Class Counsel and supports the reasonableness of the requested fee award. *See Valeant*, 2020 WL 3166456, at *14.

The requested award of fees and expenses relative to the size of the recovery and constructive common fund is also in line with contingent fees that are routinely negotiated in the private marketplace. *Merck*, 2010 WL 547613, at *12 (citing cases recognizing attorneys routinely contract for contingent fees between 30-40%). As such, the ninth factor also supports approval of the requested award.

As to the final factor, the Settlement agreement provides for a two-tiered claims system whereby Class members may obtain recovery based on the harm caused by the Data Incident. This approach is tailored to individual Settlement Class Members' claims while being administratively efficient. This factor weighs in favor of approving the requested award of fees.

Weighing the above factors, the Court finds that 33.33%, while slightly on the higher end for data breach cases, is reasonable under the percentage-of-recovery analysis. However, the 1/3 fee award will be calculated off $501,554.78, the amount *after* deducting expenses from the Settlement Fund ($600,000 less $18,855.56 in litigation expenses and $79,589.66 of settlement administration costs) to avoid awarding counsel 33.33% of costs for which counsel is already being reimbursed and to incentivize class counsel to keep administrative costs low. *See e.g., Carter v. Vivendi Ticketing US LLC*, No. 22-01981, 2023 WL 8153712, at *8 (C.D. Cal. Oct. 30, 2023); *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 769 (E.D. Pa. 2016). Therefore, the total attorneys' fees awarded shall be $167,184.93.

### ii. Lodestar Cross-Check

While it is not mandatory, courts in this District are encouraged to "cross-check" the reasonableness of percentage fee awards against the lodestar method, bearing in mind that lodestar multipliers do not "trump the primary reliance on the percentage of common fund method." *See Rite Aid*, 396 F.3d at 305-07. Multiplying the number of hours *reasonably* worked (215.20) by a "reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys," (ranging from $250/hr. for paralegals to $1,057 for partners), *see id.* at 305, the total lodestar amount for Class Counsel is $180,447.50. Fee Decl. ¶ 4. This would yield a lodestar multiplier of .93, which is within the reasonable range approved by the Third Circuit and courts in this District. *See Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-4578, 2005 WL 1213926, at *15 (E.D. Pa. May 19, 2005) ("'the resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award.'" (citing *In re Rite Aid*, 396 F.3d at 306–07 (footnotes and citations omitted)). The percentage recovery of 33.33% is thus reasonable when cross-checked under the lodestar method and is approved.

## 2. Expenses

Class Counsel's request for reimbursement of $18,855.56 in out-of-pocket litigation costs and expenses incurred to prosecute this case is approved. *See* Joint Decl. of Class Counsel, Pls. Mot for Settlement Approval, Ex. B ¶ 40, ECF No. 40-2. Class Counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). These expenditures, which are for court fees, "service costs," postage and mailing, and mediation fees "are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund." *In re Ocean Power Techs., Inc.*, No. 14-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016). Moreover, no objections have been filed to the expense request.

## 3. Case Contributions to Representative Plaintiffs

Class Counsel seek an award of $2,500 for each of the two named Plaintiffs to be paid from the Settlement Fund. The purpose of service payments is "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n. 65 (internal quotes and citation omitted). While awards that come out of funds allocated for attorneys' fees "need not be subject to intense scrutiny" because the public's interests are not directly affected, in contrast, where "payments come out of the common fund independent of attorneys' fees, the Court must carefully review the request for fairness to other class members." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (citing *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)). "[I]ncentive awards will not be freely distributed without a substantial basis to demonstrate that the individual provided services for the Class and incurred risks during the course of the litigation." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 770 (E.D. Pa. 2016) (citing *Varacallo*, 226 F.R.D. at 258). "A rubber-stamped approval by the Court of an unjustified incentive award is fodder for abuse." *Id.* at 771.

"To determine whether a proposed incentive award is proper, some courts have considered factors such as (1) "the risk to the plaintiff in commencing litigation, both financially and otherwise"; (2) "the notoriety and/or personal difficulties encountered by the representative plaintiff"; (3) "the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial"; (4) "the duration of the litigation"; and (5) "the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class." *Altnor*, F. Supp.3d at 770 (citing *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014)).

There is no indication that in this matter, the named Plaintiffs faced any financial or other risk or experienced personal difficulties. In addition, none of the named Plaintiffs

were deposed or attended the mediation. Class representatives' time and effort to this case was spent assisting Class Counsel with investigation, preparation of the pleadings, providing information, and reviewing the Settlement terms. These appear to be no more than "run-of-the-mill assistance." *Alnor*, 197 F. Supp.3d at 771. The award they seek is not proportionate to their relatively little work. *See e.g., id.* at 754, 772-73 (reducing requested $4,000 per named plaintiff to about $1,400 where named plaintiffs were not deposed, did not attend any court proceedings, faced no specific identified risks, and involvement was general and limited during span of one and one-half years of litigation); *In re Onix Grp., LLC Data Breach Litig.*, No. 23-2288, 2024 WL 5107594, at *12 (E.D. Pa. Dec. 13, 2024) (lowering requested $1,000 service award per representative to $500 given that case settled at a relatively early stage in litigation, plaintiffs were not deposed and did not attend hearings on the preliminary and final settlement approval); *In re Philadelphia Inquirer Data Sec. Litig.*, No. 24-2106, 2025 WL 845118, at *11 (E.D. Pa. Mar. 18, 2025) (reducing requested $2,000 service award to $750 for each class representative from $525,000 non-revisionary settlement fund for data breach where plaintiffs were not deposed and did not attend court proceedings). Thus, the Court will reduce the $2,500 requested service award to $1,000 each for a total service award of $2,000.

## III.   CONCLUSION

In sum, the Settlement, which has no objectors, is fair, reasonable, and adequate under Fed. R. Civ. P. 23(c), notice was adequate, and certification of the proposed Class is appropriate under Rules 23(a) and (b). Thus, Plaintiffs' unopposed motion to certify the Class and for final approval of the Class Action Settlement is **GRANTED**. Plaintiffs' request for a 33.33% attorneys' fee award and expenses is also fair and reasonable. However, the percentage recovery shall be calculated off the Settlement Fund after deducting costs. Thus, an attorneys' fees award of $167,184.93 is **GRANTED**. Class Counsels' request for a service fee award is **GRANTED** only in the revised amount of $1,000 for each of the two named representatives. An appropriate Order follows.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: October 14, 2025